**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **OTLEY L. SMITH, III,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-06-CA-00199-KC** |
| | § | |
| **STERICYCLE, INC.,** | § | |
| | § | |
| **Defendant**. | § | |

**ORDER**

On this date, the Court considered Plaintiff's Motion for Summary Judgment.  For the reasons set forth below, the Motion is **GRANTED** in part and **DENIED** in part.  In addition, the parties are **ORDERED TO SHOW CAUSE** why Smith's and Stericycle's breach of contract claims should survive this Order.

**I.      BACKGROUND**

In July 1998, Plaintiff Otley Smith III was the president of Med-Compliance Services ("MCS"), a medical waste disposal business based in El Paso, Texas.  Pl.'s Proposed Undisputed Facts ("Pl.'s Facts") ¶ 1.  In July 1998, Defendant Stericycle Inc. contracted to acquire most of the assets of MCS.  *Id.* ¶ 2.  As part of this asset purchase, Defendant entered into non-compete agreements with several MCS employees including Smith.  *Id.* ¶ 3.  On July 28, 1998, Smith and Stericycle entered into a letter agreement ("1998 Letter Agreement"), which was drafted by Frank ten Brink, Stericycle's Chief Financial Officer.  *Id.* ¶¶ 4, 6.  The 1998 Letter Agreement states that Smith would provide Stericycle with part-time consulting services.  *Id.* ¶ 4.  The Agreement also provides:

Stericycle and Otley Smith III will negotiate in good faith the future employment or consulting after the first year.

Non-compete for five year period following last day of consulting, or subsequent employment by given [sic] options as follows:

Stock Options:

| | | |
|---|---|---|
| year 1 | 4,500 shares, valued at grant date |
| year 2 | 1,500 shares, valued at grant date |
| year 3 | 1,500 shares, valued at grant date |
| year 4 | 1,500 shares, valued at grant date |
| year 5 | 1,500 shares, valued at grant date |

Options vest over 5 years and are subject to the company stock option plan

This offer is contingent on closing the transaction between Rubbish Removal Incorporated and Stericycle and the finalization of employment and non-compete agreements with Otley Smith IV, Linda Jones and yourself

The agreements will be effective on the date of closing the transaction between Rubbish Removal and Stericycle

Stericycle and Otley Smith III will negotiate in good faith final agreements, which are to be drafted by Stericycle ASAP . . .

Pl.'s Mot. for Summ. J. Ex. 1 (1998 Letter Agreement).

In August 1998, Stericycle's attorneys drafted and gave to Smith a proposed consulting agreement ("1998 Proposed Consulting Agreement"). *Id.* ¶ 7. Smith provided Stericycle with comments on the 1998 Proposed Consulting Agreement which Stericycle's attorneys incorporated in a revised agreement. *Id.* The parties never executed this agreement but the parties agree that they did continue to perform under the 1998 Letter Agreement until June 1, 2000. *Id.* ¶ 9; Def.'s Resp. to Pl.'s Facts ¶ 9. Specifically, Smith provided consulting services to Stericycle and Stericycle paid consulting fees to Smith, reimbursing Smith for consulting-related expenses and also issued IRS 1099 forms to Smith, and issued Smith stock options. *Id.* ¶ 9; Def.'s Resp. to Pl.'s Facts ¶ 9. Smith states that he and Stericycle proceeded to perform

under the 1998 Proposed Consulting Agreement which Stericycle denies.  Pl.'s Proposed

Undisputed Facts ¶ 9; Def.'s Resp. to Pl.'s Facts ¶ 9.

The Stericycle 1997 Stock Option Plan ("Stock Option Plan"), which Stericycle contends

controls Smith's stock options[1], provides in relevant part:

### Article 2
### Definitions

**Employee** means a full time employee of the Company or any Subsidiary. . . .

**Subsidiary** means a corporation in which the Company owns stock possessing at
least 50% of the total combined voting power of all classes of stock. . . .

**Termination Date** means the date of termination of employment by the
Company or a Subsidiary of an Employee or Officer-Employee. . . .

### Article 5
### Types of Options

Two types of Options may be granted under this Plan: (i) incentive stock options
intended to satisfy the requirements of § 422 of the Internal Revenue Code of
1986 ("ISOs") and (ii) nonstatutory stock options ("NSOs").

### Article 6
### Eligibility

NSOs may be granted to Employees, Officers, and Directors and to consultants to
the Company (who also may be Directors).  ISOs may be granted only to
Employees and to Officer-Employees. . . .

### 8.3     Termination of Employment

Any Option or Installement held by an Employee of Officer-Employee which is
and remains unexercisable as of his or her Termination Date shall expire on the
Termination Date.  Any Option or Installement held by an Employee or Officer-
Employee which is or becomes exercisable as of his or her Termination Date shall
also expire on the Termination Date unless the expiration date is extended by the
Plan Adminstrator. . . .

Def.'s Resp. to Pl.'s Mot. for Summ. J., Ex. 3 (Stock Option Plan).

---

[1]     Def.'s Resp. to Pl.'s Mot. for Summ. J. ¶ 8.

In January 2000, Smith and Stericycle entered into another letter agreement ("2000 Letter Agreement") drafted by Frank ten Brink. Pl.'s Facts ¶ 10. The 2000 Letter Agreement provided for an increased annual consulting fee, among other things, and that "[Smith] will sign mutually agreeable confidentiality agreement and not compete on knowledge obtained from working on Stericycle projects." Pl.'s Facts ¶ 11; Pl.'s Mot. for Summ. J. Ex. 4. Subsequently, Smith did sign a confidentiality agreement. Pl.'s Facts ¶ 12. According to Smith, the 2000 Letter Agreement was "an extension of the 1998 consulting arrangement." *Id.* ¶ 10. Stericycle denies that the 2000 Letter Agreement was such an extension. Def.'s Resp. to Pl.'s Facts ¶ 10.

From January 2000 until June 2000, Smith provided consulting services to Stericycle and Stericycle paid Smith the increased consulting fee pursuant to the 2000 Letter Agreement. Pl.'s Facts ¶ 13. During this period, Stericycle continued to issue stock options to Smith and allowed them to vest as provided in the 1998 Letter Agreement. *Id.* ¶ 14. In 2002 and in 2004, Smith exercised a portion of his vested options in Stericycle stock pursuant to the 1998 Letter Agreement. *Id.* ¶ 15. Stericycle was aware of these transactions and expressed no objection to them. *Id.* ¶ 16.

Some time after the acquisition of MCS, Stericycle also acquired an ownership interest in 3CI Complete Compliance Corporation ("3CI"). *Id.* ¶ 17. Separate and distinct from Stericycle, 3CI was an independent, publicly traded corporation with its own management, employees, accounts, customers, assets, and liabilities. *Id.* ¶ 18. In addition, 3CI filed its own tax returns and its own reports to the Securities and Exchange Commission. *Id.*

In June 2000, the 3CI Board of Directors hired Smith as its president. *Id.* ¶ 20. Smith served in this capacity from June 6, 2000 until April 26, 2006, when 3CI terminated him. *Id.*

Once Smith became president of 3CI, he ceased providing consulting services to Stericycle and Stericycle ceased paying Smith consulting fees. *Id.* ¶ 21. With Smith as its president, 3CI did not conduct any business operations nor solicit any customers in New Mexico or in Hudspeth or El Paso counties in Texas. *Id.* ¶ 22. Nor did Smith utilize or facilitate any proprietary or confidential knowledge obtained while working on Stericycle projects during this time. *Id.* ¶ 23. Stericycle has not alleged that Smith improperly competed with Stericycle or facilitated others to compete with Stericycle while he was president of 3CI. *Id.* ¶ 24.

In early 2006, while employed as 3CI's president, Smith attempted to exercise his remaining stock options in Stericycle stock. *Id.* ¶ 26. Stericycle blocked the exercise. *Id.* ¶ 27. Smith claims that Stericycle did this for the sole reason that he had not signed a non-compete agreement with Stericycle. *Id.* Stericycle denies that it blocked the exercise for this sole reason. Def.'s Resp. to Pl.'s Facts ¶ 27. On February 24, 2006, Smith sent a letter to Stericycle asking that he be allowed to exercise the stock options and he tendered payment for the acquisition of the options. Pl.'s Facts ¶ 28. Smith received a response from Stericycle's counsel on February 28, 2006, which stated that Stericycle would not allow Smith to exercise the options until Smith executed a new five year non-compete agreement. *Id.* ¶ 29. During the first several months of 2006, Stericycle sent Smith at least three different forms of non-compete agreements. *Id.* ¶ 30. Stericycle denies that these non-compete agreements were for Smith to sign and denies that these agreements were materially different from Smith's earlier agreements with Stericycle. Def.'s Resp. to Pl.'s Facts ¶ 30. Stericycle claims in this lawsuit that Smith is obligated to execute a new five year non-compete agreement, which begins to run when Smith left 3CI's employment on April 26, 2006, and which extends to all geographic areas where Stericycle does business. Pl.'s Facts ¶ 32. Smith currently holds 8,400 unexercised Stericycle stock options. *Id.* ¶ 33.

## II.   DISCUSSION

### A.   Standard

Summary judgment is required "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c) (2007); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006).  The substantive law identifies which facts are material.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248,(1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Ellison*, 85 F.3d at 189.

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046-1047 (5th Cir. 1996).  If the moving party meets its initial burden, the nonmoving party "must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e).  The nonmovant's burden may not be satisfied by "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Warfield*, 436 F.3d at 557 (quoting *Freeman v. Texas Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004)).  Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)  (en banc).  Thus, the ultimate inquiry in a summary judgment motion

is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### B.  Plaintiff's Motion for Summary Judgment

In his Motion, Smith argues that this Court should provide him with declaratory relief finding that he is entitled to exercise his vested options in Stericycle stock pursuant to the parties' agreements and past performance, and that he is not obligated to enter into a new non-compete agreement with Stericycle. Pl.'s Mot. for Summ. J. ¶ 1.  He also argues that Stericycle has breached its agreements with him by blocking his attempt to exercise these options. *Id.* Stericycle responds that summary judgment is not appropriate because questions of fact exist as to when the term of Smith's non-compete began, whether Smith breached the 1998 Letter Agreement, the Stock Option Agreement, and the Stock Option Plan, and whether Smith is estopped from acting contrary to these agreements. Def.'s Resp. to Pl.'s Mot. for Summ. J. ¶¶ 21, 25.

The case comes before this Court based upon diversity jurisdiction, as Smith is a citizen of Texas, Stericycle is a Delaware corporation with its principal place of business in Illinois, and the amount in controversy exceeds $75,000. *See* 28 U.S.C. 1332.  Because this is a diversity action, the Court applies the law of the state in which it sits and in which the events at issue took place. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).  In this case, the Court applies Texas law.

Smith brings the bulk of his claims under the Texas Uniform Declaratory Judgment Act ("TUDJA"), which affords Texas courts the "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." TEX. CIV. PRAC. & REM.CODE §

37.003 (Vernon 2007); *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 357 (Tex.

2000).  The stated purpose of the TUDJA "is to settle and to afford relief from uncertainty and

insecurity with respect to rights, status, and other legal relations; and it is to be liberally

construed and administered."  *Id.* § 37.002(b).

### 1.    Ambiguity of agreements

Smith contends that according to the 1998 Letter Agreement, the term of his non-

compete began upon the termination of his consulting services to Stericycle in June 2000, and

that the 1998 Letter Agreement is unambiguous on the issue of the term of his non-compete in

his favor.  Therefore, he argues that the Court should grant summary judgment on his claim for

declaratory relief.  Stericycle insists that the 1998 Letter Agreement is ambiguous, creating a

question of fact thereby surviving summary judgment.

In Texas, determining whether a contract is unambiguous and interpreting an

unambiguous contract are questions of law.  *Cedyco Corp. v. PetroQuest Energy, LLC*, 497 F.3d

485, 490 (5th Cir. 2007) (citing *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121

(Tex.1996)); *Universal Health Svcs., Inc. v. Renaissance Women's Group*, P.A., 121 S.W.3d

742, 746 (Tex. 2003).  "We give terms their plain, ordinary, and generally accepted meaning

unless the instrument shows that the parties used them in a technical or different sense."  *Cedyco*

*Corp.*, 497 F.3d at 490.  In determining whether a contract contains an ambiguity, a court

considers the contract as a whole in light of the circumstances present when the parties entered

the contract.  *Sw. Bell Tel., L.P., v. Pub. Util. Comm'n of Tex.*, 467 F.3d 418, 422 (5th Cir. 2006)

(citing *Universal Health Svcs., Inc.*, 121 S.W.3d at 746).  If the language of the contract contains

"a certain or definite meaning," then it is not ambiguous and should be interpreted as a matter of

law by the court.  *Id.* (citing *Enterprise Leasing Co. of Houston v. Barrios*, 156 S.W.3d 547, 549

(Tex. 2004)).  Differing interpretations of a contract do not necessarily create an ambiguity; rather, ambiguity arises from differing *reasonable* interpretations.  *Id.* (internal citation omitted) (emphasis added).  Thus, if a contract is subject to multiple reasonable interpretations, after applying the pertinent rules of construction, then the contract is ambiguous, creating a fact issue on intent.  *Id.*

The 1998 Letter Agreement signed by Smith and Frank ten Brink, the CFO of Stericycle, states that Smith is obligated to a "non-compete for five year period following the last day of consulting, or subsequent employment . . . ."  Smith's position is that the 1998 Letter Agreement is unambiguous with regard to the term of his non-compete, that the five year period begins either following the last day of consulting or the last day of subsequent employment by Stericycle.  Stericycle contends that the period begins either following the last day of consulting or the last day of subsequent employment by Stericycle or any subsidiary of Stericycle.  The Court agrees with Smith and holds that the 1998 Letter Agreement is unambiguous on the issue of the non-compete.

The plain, ordinary language of the Agreement is clear and the circumstances present when the parties entered into the Agreement support the lack of ambiguity.  It is undisputed that only Smith and Stericycle entered into this Agreement and it is undisputed that Smith provided consulting to Stericycle and that Stericycle paid Smith for this consulting.  The only parties to the 1998 Letter Agreement and the only parties with duties under the Agreement were Smith and Stericycle.  In fact, the word "subsidiary" does not appear anywhere in the Agreement. Stericycle provides no reason for the Court to read the word "subsidiary" into an agreement that makes no reference to and has no involvement with a Stericycle subsidiary.  Stericycle's contention that subsequent employment includes employment with its subsidiaries is thus an

unreasonable reading, and the attempt to create an ambiguity fails.  *See Sw. Bell Tel., L.P.*, 467
F.3d at 422.

Next the structure of the non-compete term in the 1998 Letter Agreement supports
Smith's plain reading of the Agreement.  In the Agreement, the phrase "on the last day of
consulting" refers to the last day of consulting with Stericycle, the company that, according the
1998 Letter Agreement, entered into the relationship with, engaged, and paid Smith.  The phrase
"or subsequent employment" parallels the previous phrase, that is, following the last day of
consulting for Stericycle or the last day of subsequent employment with Stericycle.

Further, the circumstances as they existed at the time the parties entered into the
Agreement do not support the presence of any ambiguity with regard to this term.  *See id.*  There
is no evidence that subsidiaries were involved in any way in this transaction.  It was Stericycle
that acquired Smith's company, it was Stericycle who offered a consulting opportunity to Smith,
and it was Stericycle who negotiated and signed the Agreement.  To introduce the notion of
Stericycle subsidiaries into the plain language of the 1998 Letter Agreement finds no support in
the circumstances surrounding the creation of the Agreement.  The 1998 Letter Agreement is not
ambiguous; rather, it sets forth the terms of the non-compete clearly on its face, that Smith was
not to compete with Stericycle for a period of five years following the end of his consulting
engagement or five years following the last day of subsequent employment by Stericycle.

### 2.	Stock options and performance under the 1998 Letter Agreement

Next, Smith argues that he is entitled to declaratory judgment on his claim that
Stericycle should allow him to exercise his remaining Stericycle stock options.  Pl.'s Mot. for
Summ. J. ¶ 1.  Stericycle, however, responds that the 1998 Letter Agreement states "[o]ptions
. . . are subject to the company stock option plan."  Def.'s Resp. to Pl.'s Mot. for Summ. J. ¶ 23.

Stericycle argues that the Stock Option Plan controls, and that the Plan provides that unexecuted options expire upon termination of employment with Stericycle or its subsidiaries. *Id.* Therefore, Stericycle claims that Smith's options expired upon his termination from 3CI, the Stericycle subsidiary, and that he is not entitled to declaratory relief regarding his rights in these options. *Id.* ¶ 24.

In fact, it is not certain that the Stock Option Plan applies to the option grant contained in the 1998 Letter Agreement. The Stock Option Plan[2] requires execution of the Stock Option Agreement, and there is no evidence that Smith ever entered into such an agreement with Stericycle. Assuming that the Plan applies, this attempt by Stericycle to block Smith's exercise of options or to strong arm him into signing a new non-compete agreement is still of no avail.

The Stock Option Plan provides in its Definitions Article that "Employee means a full-time employee of the Company or any Subsidiary." Def.'s Resp. to Pl.'s Mot. for Summ. J. Ex 3, Art. 2. It also provides in Section 8.3, Termination of Employment, that the options expire on the Employee's Termination Date. *Id.* at Art. 8.3. It is undisputed that when Stericycle granted Smith the stock options in the 1998 Letter Agreement, he was engaged as "consultant," to work "approx. 2.5 days per week." Pl.'s Mot. for Summ. J. Ex. 1. In fact, Stericycle never contends that Smith was a full-time Stericycle employee. Thus, the employee provisions of the Stock Option Plan, including the expiration of options at termination, do not apply to Smith's option grant under the 1998 Letter Agreement because he was not employee, as defined under the Plan, when he received the options grant.

---

[2]      As set forth in Section 8.6, Option Agreements, of the Stock Option Plan.

And even if the Plan were to apply to Smith when he subsequently became an employee of a Stericycle subsidiary, as president of 3CI, he nevertheless attempted to exercise his vested options on February 24, 2006, *prior* to his termination on April 26, 2006.  Thus, Smith was still employed at the time of his attempt to exercise the vested options granted under the 1998 Letter Agreement.  Further Section 8.3 of the Stock Option Plan, regarding the expiration of unexercised options upon termination, was not implicated.  Smith was entitled to exercise the stock options at that time.

Stericycle vaguely asserts that Smith failed to live up to his bargain under the 1998 Letter Agreement because he never signed a separate non-compete agreement with Stericycle as set out in the Agreement.  Stericycle also raises the affirmative contract defense of estoppel claiming that it was somehow tricked by Smith into changing its position to its detriment, and to Smith's benefit.  First, as to the estoppel argument, Stericycle has failed to explain how estoppel would apply in this case.  Presumably, Stericycle seeks to prevent Smith from benefitting from the 1998 Letter Agreement because he never subsequently signed a non-compete agreement as prescribed in the 1998 Letter Agreement.  Nevertheless, Stericycle does not actually explain how estoppel applies in this case, or apply the law to the facts of this case.  Thus, Stericycle's estoppel defense fails.

With regard to its claim that Smith breached the 1998 Letter Agreement because he did not sign a non-compete agreement, this argument also fails because Stericycle ratified the Agreement.  Ratification of a contract occurs when a party recognizes the validity of a contract by acting or performing under that contract or by otherwise affirmatively acknowledging it. *Missouri Pacific R.R. Co. v. Lely Dev. Corp.*, 86 S.W.3d 787, 792 (Tex. App. 2002) (citing *Stable Energy, L.P. v. Newberry*, 999 S.W.2d 538, 547 (Tex. App. 1999)); *see also Fowler v.*

*Resolution Trust Corp.*, 855 S.W.2d 31, 35 (Tex. App. 1993). Thus, if a party to a contract, by its conduct, recognizes a contract as valid, having knowledge of all relevant facts, it ratifies the contract. *Id.* Once a party ratifies a contract, it may not later withdraw its ratification and seek to avoid the contract. *Lely Dev. Corp.*, 86 S.W.3d at 792. "Ratification may be inferred by a party's course of conduct and need not be shown by express word or deed." *Id.* (citations omitted). Any act inconsistent with an intent to avoid a contract has the effect of ratifying the contract. *Id.* Whether a party has ratified a contract may be determined as a matter of law, if the evidence is not controverted or if it is incontrovertible. *Id.*

In this case, the course of conduct confirms that the parties have ratified the 1998 Letter Agreement. Until 2005, it is undisputed that Stericycle issued stock options to Smith, vested those rights with Smith, and allowed him to exercise the rights as set out in the 1998 Letter Agreement. It acted so despite the fact that the parties had failed to execute a non-compete agreement. In addition, although Smith had not signed a non-compete agreement, Stericycle continued to engage him as a consultant and to pay him until June 2000 when he stopped consulting for Stericycle. In fact, despite the lack of a non-compete agreement, Smith was hired by a Stericycle subsidiary, 3CI, as its president. In addition, though the issue was raised again in the 2000 Letter Agreement, both Smith and Stericycle continued to perform under the terms of the 1998 Letter Agreement, as modified by the 2000 Letter Agreement, with Smith providing consulting services to Stericycle and Stericycle compensating Smith and vesting his options. Thus, the Court finds that, based upon the undisputed evidence, Stericycle ratified the 1998 Letter Agreement. It recognized it as valid, performed under it, and cannot now seek to void it. *See Lely Dev. Corp.*, 86 S.W.3d at 792.

### 3. Breach of contract claim

In his Amended Complaint, Smith includes a claim of breach of contract.  However, in his Motion for Summary Judgment, he makes almost no mention of the claim.  He provides no law as to the contours of breach of contract in Texas, he provides no argument as to how Stericycle breached the contract, nor does he explain which contract(s) have been breached, the nature of his damages, nor does he apply the law to the facts.  Accordingly, the Court will not entertain this ground for summary judgment.  Accordingly, Smith's Motion for Summary Judgment on the breach of contract claim is **DENIED.**

## III.   CONCLUSION

For the reasons set forth above, Smith's Motion for Summary Judgment (Doc. No. 45) is **GRANTED** in part and **DENIED** in part.  The Motion is **GRANTED** as to Smith's declaratory judgment claim that the five year non-compete term with Stericycle began upon the termination of his consulting work with Stericycle in June 2000 when he became the president of 3CI, that he has satisfied all such non-compete requirements, and that he is not required to enter into any additional non-compete agreement with Stericycle.  In addition, Smith's Motion for Summary Judgment is **GRANTED** as to his declaratory judgment claim that Smith is entitled to exercise all of the remaining Stericycle stock options, which vested five years from the termination of his consulting for Stericycle in June 2000.  Smith's Motion for Summary Judgment is **DENIED** as to his breach of contract claim.  In addition, Stericycle's reciprocal declaratory judgment actions presented in its counterclaim are dismissed, the Court having found in Smith's favor as to these claims.

Finally, the parties are **ORDERED TO SHOW CAUSE** why Smith's breach of contract

claim and Stericycle's breach of contract claim should not be dismissed in light of this ruling.

The parties are **ORDERED** to respond to this Order to Show Cause by **January 24, 2008**.

      **SO ORDERED.**

      **SIGNED** on this 15th  day of January 2008.

                            KATHLEEN CARDONE
                            UNITED STATES DISTRICT JUDGE